**In re Betty Lynn SMITH and Johnny L. Smith, Debtors.**

**Betty Lynn SMITH and Johnny L. Smith, Plaintiffs,**

v.

**The PEOPLES BANK & TRUST COMPANY, Defendant.**

**Bankruptcy No. S80–10407.
Adv. No. S80–1097.**

United States Bankruptcy Court, N.D. Mississippi, E.D.

Jan. 12, 1983.

---

Linda Bailey, North Mississippi Rural Legal Services, Tupelo, Miss., for plaintiffs.

Dennis W. Voge, Mitchell, Eskridge, Voge, Clayton & Beasley, Tupelo, Miss., for defendant.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

On September 8, 1980, Betty Lynn Smith and Johnny L. Smith, debtors, filed their joint voluntary petition in bankruptcy under chapter 7 of the 1978 Bankruptcy Code. Listed under *Schedule B–2 Personal Property*, attached to said joint voluntary petition, were "household goods, supplies and furnishings" described as "dinette set, bedroom suite, child's bedroom suite and kitchen appliances"; and there were no items listed under "automobiles, trucks, trailers and other vehicles". Under *Schedule A–2 Creditors Holding Security* defendant, The Peoples Bank & Trust Company was named as "The Peoples Bank" and shown to claim a lien only for a "dinette set" valued at $525.00. Under *Schedule B–4 Property Claimed As Exempt* were the following described household goods: "Dinette set" valued at $200.00; "5 piece bedroom suite" valued at $200.00; "child's bedroom suite" valued at $200.00; and "miscellaneous kitchen items" valued at $140.00. Such exemption was claimed under 11 U.S.C. section 522(d).

On September 24, 1980, debtors filed their amended schedule B–4 claiming as exempt under 11 U.S.C. section 522(d), a "1974 Toyota Corolla sutomobile" valued at $1,000.00.

On October 16, 1980, The Peoples Bank & Trust Company, describing itself as "plaintiff", filed its "Application for Order to Abandon Secured Property" in bankruptcy number 80–10407 against Jacob C. Pongetti, trustee. Said application was not treated as an adversary proceeding and no adversary proceeding number has ever been assigned thereto. Nevertheless, the prayer of said application was that an order of this court direct the trustee to abandon an 8 piece bedroom suite, a 5 piece dinette suite and abandon a 1974 Toyota Corrola automobile bearing serial number TE27429562 ". . . so that it may take such lawful action with respect to said vehicle as it may deem necessary or advisable, as though the said Johnny Smith and Betty Smith had not been adjudicated a bankrupt. . .". The record is silent as to any objection by the trustee as to such application and prayer, but the record affirmatively shows that an objection thereto was filed by said debtors on October 20, 1980.

Said debtors, as plaintiffs herein, filed their complaint denominated "Application for Order Avoiding Lien" in the instant adversary proceeding on October 27, 1980. Said complaint prayed for an order avoiding liens on said 8 piece bedroom suite, said 5 piece dinette suite and said 1974 Toyota Corolla automobile bearing VIN TE27429562. Said complaint also prayed that the Peoples Bank & Trust Company be directed to execute and deliver to debtors the title to said 1974 automobile; and said complaint prayed for general relief. The certificate of service herein shows that a summons in this adversary proceeding was served on defendant, The Peoples Bank & Trust Company, on October 31, 1980.

Paragraph VIII of defendant's "Answer to Application for Order Avoiding Lien", filed herein on November 25, 1980, though not denominated as a counterclaim, includes the following language in effect constituting a counterclaim: ". . . Plaintiff denies that this court should avoid the lien against the 1974 Toyota Corolla automobile and ask that said vehicle be abandoned, or, in the alternative, that debtors be ordered to pay its fair market value to plaintiff before it may take said automobile free of plaintiff's lien," Said paragraph VIII admits, however, that its lien against the household goods listed in its application for abandonment in debtor's application to avoid lien should be set over to debtors.

Notices of hearing dated December 10, 1980, consolidated the bank's aforementioned application (not treated as an adversary proceeding) and the debtors' aforementioned complaint (which was treated as an adversary proceeding) for hearing on February 24, 1981. Such consolidated hearing was conducted by this court on February 24, 1981.

At the outset of the hearing conducted on February 24, 1981, counsel for defendant creditor, The Peoples Bank & Trust Compa-

ny, reiterated in open court the position taken by defendant in paragraph VIII of the aforementioned answer that said defendant "gives up any claim to debtors' household goods" as described in the pleadings. The court's order herein will include appropriate relief avoiding defendant bank's lien as to said 8 piece bedroom suite and said 5 piece dinette suite.

The following pertinent facts are uncontradicted in this record:

1. On September 20, 1978, debtor Betty L. Smith borrowed $1,872.24 from defendant bank. This loan was evidenced by an installment note and disclosure statement, under the terms of which the loan was repayable in twenty-four monthly installments of $78.01 each commencing on October 20, 1978. Shown on the face of said instrument ". . . as collateral for payment of this and any and all other liabilities direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising . . ." is a "1974 Toyota Corola (sic) VIN TE27429562", the market value of which is not shown. Also on September 20, 1978, debtor Betty L. Smith executed a security agreement covering said Toyota automobile in favor of defendant bank. Although a space is provided on said security agreement for a signature of defendant bank by a vice-president, the record copy of said agreement contains no signature by the bank. The record does include a Mississippi Certificate of Title of a motor vehicle indicating that as of title date "10/20/78" Betty Smith was the sole owner of said automobile and that Peoples Bank & Trust Company held a lien dated "10/05/78".

2. On March 26, 1979, debtor Betty Smith executed an installment note and disclosure statement in favor of defendant bank in the principal amount of $1,187.52, providing for twenty-four monthly installment payments of $49.48 each, commencing on April 25, 1979. Shown as collateral thereunder is an 8 piece bedroom suite and a 5 piece dinette suite, the market value of which is not shown. There is no reference to the aforementioned Toyota automobile or to any other collateral. Also in the record is a security agreement executed by Betty Smith on March 26, 1979, describing only

the same household furniture. Again, the security agreement provides a space for the bank's signature, but no signature is shown. There is a companion financing statement which bears both debtor Betty L. Smith's signature and said bank's signature. The stipulated balance owing under said note at the time of the February 24, 1981, hearing was $519.80. The only collateral shown on the bank's ledger is "furniture" (8 piece bedroom and 5 piece dinette).

3. On June 7, 1979, debtors Betty L. Smith and Johnny L. Smith executed their joint installment note and disclosure statement in favor of said bank in the principal amount of $1,363.68, payable in eighteen monthly installments of $75.76 each, commencing July 20, 1979. At the place provided for the listing of collateral, said instrument recites "OPEN". There was no accompanying security agreement or financing statement. The stipulated balance under said note as of February 24, 1981, was $909.12. The collateral description on the bank's ledger is "open" and "unsecured".

4. On July 18, 1979, debtor Betty Smith executed her installment note and disclosure statement in favor of said bank in the principal amount of $653.28, payable in twelve monthly installments of $54.44 each, commencing August 20, 1979. At the place provided for a listing of collateral, said note recites "Open". There was no accompanying security agreement or financing statement. The stipulated balance owing under said note as of February 24, 1981, was $297.20. The collateral description on the bank's ledger is "open" and "unsecured".

5. When the loans of March 26, 1979, June 7, 1979, and July 18, 1979, were negotiated, the bank made no disclosures indicating that said 1979 loans were deemed secured by any lien on said Toyota automobile.

There were contradictions as to some pertinent facts, to wit:

a) The bank's witness, Gerald E. Johns, who was the bank's Indirect Loan Manager, asserted that the fair market value of said Toyota automobile was something in excess of $1,200.00, but he conceded that he had not seen said automobile and that he knew

nothing about its condition. On the other hand, debtor Betty L. Smith asserted that the $1,000.00 valuation for said automobile shown in the amended schedule to the chapter 7 petition constituted the fair market value.

b) The bank contended that the balance owing under the aforementioned note dated September 20, 1978, secured by said automobile as collateral, was $3.12 as of February 24, 1981. However, debtor Betty L. Smith contended that she owed nothing under said note of September 20, 1978, and that the same had been fully paid.

Both the question of the fair market value of said automobile and the question of whether or not the note of September 20, 1978, had been fully paid were placed in issue under the following affirmative defenses set forth in defendant bank's answer: "Plaintiff would affirmatively show ... that said bank is entitled to the fair market value of said automobile ..."; and "Plaintiff would affirmatively show ... that the debtor, Betty Lynn Smith, has not, in fact, made all payments due on the original note executed by her...". Having thus undertaken the burden of the proof under such affirmative defenses, the evidence must be weighed appropriately. Manifestly, said Indirect Loan Manager's opinion was unsupported by any personal inspection of said automobile, and said witness did not profess to know the condition of said automobile. The bank did not sustain its burden of proof to show a value in excess of the scheduled value of $1,000.00. The bank's principal evidence on the question of whether or not a balance remained owing under the note of September 20, 1978, was an exhibit denominated "Paid Out History Ledger". Although said ledger indicates that at some point in time not indicated thereon a late charge of $3.12 arose, both the "unpaid balance" section and the "total amount due" section on said ledger sheet are blank. Such ambiguities likewise do not sustain the bank's burden of proof sufficiently to show that a balance of $3.12 or any balance remained unpaid. Accordingly, this court finds that the note of September 20, 1978, had been fully paid at the time of the February 24, 1981, hearing.

Section 75–9–204(3), Mississippi Code of 1972, provides:

"(3) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (section 75–9–105(1))."

It is undisputed that under said Mississippi statutory provision a security agreement, including the underlying promissory note and disclosure statement, may include a dragnet or future advances clause couched in language such as that which appears on the face of the installment note and disclosure statement evidencing the loan of September 20, 1978, secured by the lien on the 1974 Toyota Corolla automobile. Assuming, arguendo, that the provisions of the Truth in Lending Act, section 128(a)(10), 15 U.S.C.A. section 1638(a)(10) and of the Truth in Lending Regulations, Regulation Z, section 226.8(b)(5), 15 U.S.C.A. following section 1700, were correctly followed by defendant while negotiating the loan of September 20, 1978, and that all other provisions of state and federal law were observed in that connection, a valid lien was then obtained by defendant bank on said 1974 Toyota Corolla automobile. Under such assumptions, the future advances language embodied in the note and disclosure statement paved the way for the bank to secure future advances under the same security arrangement as to said automobile. Indeed, the decision of *Matter of Garner,* 556 F.2d 772 (5th Cir. 1977), decided by the United States Court of Appeals for the Fifth Circuit, stands for the proposition, inter alia, (though the reverse of the factual situation in the instant case) that it is not sufficient that a dragnet clause in the security agreement be disclosed at the time of the future advances which are to be secured by the same security given for the original loan; existence of the dragnet clause must be disclosed at the time of the initial loan. Arguably, an inference may be drawn from said decision in *Matter of Garner, supra,* that Truth in Lending disclosures are unnecessary when future advances are made if such disclosures have been made appropriately at the time of the initial loan.

On the further assumption, arguendo, that the loans of March 26, 1979, June 7, 1979, and July 18, 1979, were lawful future advances within the meaning of the future advances clause of the note and disclosure statement dated September 20, 1978, there would be no impediment to the continuation of defendant bank's lien on said 1974 Toyota Corolla automobile after the payment in full of the note of September 20, 1978. In the instant case the September 20, 1978, note had not been paid in full when the three 1979 loans were made. Even if the September 20, 1978, loan had been fully paid before the negotiation of the 1979 loans, defendant bank arguably might have secured the three 1979 loans under its lien on said automobile if said 1979 loans lawfully constituted future advances as defined in the September 20, 1978, note and disclosure statement. The decision in *Matter of Lawrence Peska Associates, Inc.,* 5 BCD 278 (1979), rendered by the United States Bankruptcy Court for the Southern District of New York, stands for the proposition that full payment of the first of a series of secured notes made in connection with a valid future advances agreement does not extinguish the security agreement until it expires by its terms or is revoked according to law. Arguably, therefore, the security agreement of September 20, 1978, may not have expired by its terms by revocation or otherwise according to law before the 1979 loans were made.

Nevertheless, the foregoing assumed circumstances, however interesting as an academic exercise, must yield to the facts shown in this record and the legal principles related thereto.

In connection with the loan of March 26, 1979, secured by certain furniture hereinabove described, it would have been a simple matter for defendant bank to have added said automobile to the listing of collateral and to have reflected both the furniture and the automobile collateral on the disclosure statement and on the bank's own ledger sheet. The bank failed to do this.

Similarly, the "open" and "unsecured" note of June 7, 1979, could have included not only said automobile but also said furniture had the bank elected to include such items and to make disclosure thereof.

Again, in connection with the "open" and "unsecured" loan of July 18, 1979, the bank could have included and disclosed both the furniture and said automobile as security. The bank failed to do so.

Seemingly, defendant bank went out of its way to make such affirmative notations as "open" and "unsecured" in some of the loan documents now represented by defendant bank to evidence "future advances" under the original secured loan of September 20, 1978.

In the opinion of this court, the decision of the United States Bankruptcy Court for the Western District of Missouri in *Matter of Antuna,* 4 B.R. 25 (1980) is persuasive and dispositive of the issues in the instant case. *Matter of Antuna, supra,* stands for the legal principles that subsequent, more specific expression of intention of the parties controls over prior, more general expression and that case and authorities to the general effect that a prior security agreement may cover subsequent advances do not apply to a situation in which the subsequent advances are given pursuant to agreements which contradict and repudiate the prior security agreement. Consonant with such principles, this court is of the opinion that by not harmonizing the three 1979 loans with the future advances clause in the 1978 loan, but by resorting only to furniture security in the March 26, 1979, loan and to language such as "open" and "unsecured" in the June 7, 1979, and July 19, 1979, loans, defendant bank contradicted and repudiated the September 20, 1978, security agreement as to securing future advances by impressing further liens on said automobile.

In other words, defendant bank failed to utilize its future advances security rights and chose instead to rely exclusively on other security or on open unsecured notes, as the case may be.

Accordingly, the judgment in this adversary proceeding will include provisions avoiding defendant bank's claimed lien on said 1974 Toyota Corolla automobile bear-

ing vehicle identification number TE27429562 and ordering defendant bank to mark its lien on said automobile paid in full on the face of the original motor vehicle title document and to deliver said original title document to plaintiff Betty Lynn Smith (shown to be the owner on the face of said title document).

Said judgment will also dismiss the aforementioned "Application for Order to Abandon Secured Property" filed by said bank on October 16, 1980, and will dismiss with prejudice defendant bank's counterclaim included in its answer filed on November 25, 1980.

The foregoing memorandum opinion sets forth my findings of fact and conclusions of law. A proposed judgment is submitted herewith for signature by a United States District Judge.